AMERICAN PNEUMATIC SERVICE CO. et al. v. SNYDER et al.

(District Court, D. New Jersey. March 31, 1917.)

1. PATENTS ⬡═318(3)—INFRINGEMENT—ACCOUNTING FOR PROFITS—SAVING BY USER.

In general, the measure of liability of the user of an infringing device for profits is the saving or advantage derived by such use over what he could have obtained by the use of other noninfringing devices available to him during the same time.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 570, 571, 575.]

2. PATENTS ⬡═318(3)—INFRINGEMENT—PROFITS RECOVERABLE FROM USER—STANDARD OF COMPARISON.

Selection of a standard for comparison to ascertain the profits of an infringing user is not to be restricted to unpatented devices, nor to such devices or processes as were a part of the art at the date of the patent infringed; but the field for selection embraces all that was a part of the art at the time the invention was appropriated, whether patented or not.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 570, 571, 575.]

In Equity. Suit by the American Pneumatic Service Company and another against William G. Snyder and others. On exceptions by defendants to master's report. Exceptions sustained.

J. J. Kennedy and C. J. Sawyer, both of New York City, for complainants.

James H. Griffin, of New York City, and H. P. Simonton, of Chicago, Ill., for exceptants.

RELLSTAB, District Judge. The defendants have been held to infringe patent No. 658,102, for improvements in pneumatic dispatch systems. 180 Fed. 712, 104 C. C. A. 78. The master, on a reference for an accounting, found that the defendants had used such system 641 days, and that the savings amounted to $6 a day, aggregating the sum of $3,846.

The proceedings before the master were limited to the question of profits (savings) realized by the defendants from the use of the infringing system, as they were users of, and not manufacturers of, or dealers in, said devices. The defendants have filed three exceptions. The first and second challenge the master's conclusions as to the number of days and the amount of the savings per day. His finding of the number of days that the infringing system was used is warranted by the evidence. He does not state the standard for comparison used in reaching the amount of the daily savings reported, or give any reason for rejecting the standard submitted by the defendant, and his findings as to profits recoverable by the plaintiff can be sustained only

if the system theretofore used by the defendants and supplanted by the infringing device is accepted as such standard. The third exception, which is mainly relied upon, challenges said standard. It is contended under this exception that the evidence shows that another and noninfringing system, operating with equal economy, was open to defendants to use during the entire time they used the infringing system.

This infringing system was installed by the Universal Pneumatic Transmission Company (who, though a contributing infringer, is not a defendant herein), and, as used by the defendants, carried sales slips and cash from the salesman to the cashier, and returned change and duplicate slips. At the time of such installation the Transmission Company was the owner of a patent covering a dispatch system, which the plaintiffs concede is not an infringement of the patent in suit, and which it could have installed, instead of that held to be such infringement.

To the defendants' contention that they had the right to use said noninfringing apparatus, the plaintiffs interpose a threefold answer: First, that said system was not known and open to the public at the date of plaintiff's patent; second, that, as it was patented, it was not open for defendants' use; and, third, that it was not open for defendants' use at the time of their infringement, because at that time it had not passed the undeveloped, experimental state.

[1] The first and second answers present simply a question of law and will be considered together. Generally stated, the measure of an infringer's liability for profits is the saving or advantage derived by his use of the plaintiff's invention over and above what he could have obtained by the use of other noninfringing devices available to him during the period of the infringement, and adequate to enable him to obtain an equally beneficial result. Mowry v. Whitney, 81 U. S. (14 Wall.) 620, 20 L. Ed. 860; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664. General and somewhat variant judicial expressions of what is necessary to constitute a standard for comparison on the question of profits are rather numerous, the following being typical:

"Then open to the public," Mowry v. Whitney, 81 U. S. (14 Wall.) 620, 20 L. Ed. 860; "in common use," Black v. Thorne, 111 U. S. 122, 4 Sup. Ct. 326, 28 L. Ed. 372; "known and in general use anterior to date of the patent," Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609; "common and unrestricted use," Locomotive Safety Truck Co. v. P. R. Co. (C. C.) 2 Fed. 677; "free to everybody," National Car-Brake Shoe Co. v. Terre-Haute Car & Mfg. Co. (C. C.) 19 Fed. 514; "open to the defendants," Wales v. Waterbury Mfg. Co., 101 Fed. 126, 41 C. C. A. 250; "known prior to complainant's invention," Fullerton Walnut Growers' Ass'n v. Anderson-Barn Grover Mfg. Co., 166 Fed. 443, 92 C. C. A. 295; "gone into public use," Novelty Glass Mfg. Co. v. Brookfield, 170 Fed. 946, 95 C. C. A. 516; "open to the world," Cambria Iron Co. v. Carnegie Steel Co., 224 Fed. 917, 140 C. C. A. 437.

In none of these, however, so far as the reports indicate, was it necessary to pass upon the question whether a patented device which became a part of the art subsequent to the invention wrongfully appropriated could be used as such a standard.

[2] The plaintiff mainly relies upon Turrill v. Ill. C. R. Co. (C. C.) 20 Fed. 912, in which it was held that:

"In estimating profits made by the infringer of a patent, the comparison must be between the patented invention and what was known and open to the public at and before the date of the patent."

See, also, Walker on Patents (4th Ed.) § 725.

In Columbia Wire Co. v. Kokomo Steel & Wire Co. (7 C. C. A.) 194 Fed. 108, 114 C. C. A. 186, however, it was held that the time of the appropriation of the plaintiff's invention, and not the date of the patent covering it, was the time as of which to ascertain what standard for comparison was available to the defendant.

In McCreary v. Penna. Canal Co., 141 U. S. 459, 12 Sup. Ct. 40, 35 L. Ed. 817, the Turrill Case and the therein stated doctrine of exclusion from the standard of comparison of devices unknown in the prior art were referred to, but no opinion was expressed as to the correctness of said rule. As far as I have been able to ascertain, that doctrine has never been applied in any other case, although in some of the reported cases general language is used limiting the standard to such devices as were in use prior to the date of the patent infringed. However, nothing appears in the reports of such cases showing that devices entering the art subsequent to such date, but available during the time of the infringement, were rejected.

In the Columbia Wire Company Case, supra, the master's finding, viz.:

"When appellee appropriated the Bates invention, other machines that would have made a more favorable comparison with the Bates machine than did the Stover were open to appellee's use"

—was challenged. Judge Baker's answer to said attack so completely disposes of the contention made in the instant case that I adopt it for said purpose. He said (194 Fed. 109–110, 114 C. C. A. 187, 188):

"In determining the law applicable to the facts of this case, we attempt no distinction, if any is possible, between machines that are available because they are not under patents and patented machines that are available because they are freely sold in the market by the patentee. Here the controversy narrows to a question of time as an element in the proper standard of comparison. * * * No Supreme Court decision is known to us in which the recorded facts show that machines, devised since the patent and comparing with the patented machine more favorably than did the machines of the prior art, were open to public use at the time the defendant began the infringement, and in which such facts were held to be irrelevant. Nor are we aware that the Supreme Court has ever propounded and answered, by way of argument or illustration, the precise question that is before us for decision. In the absence of controlling precedents, it is incumbent upon us to express the judgment at which we have independently arrived.

"A manufacturer who devises a machine that he honestly believes he has a right to use, and who in an injunction suit ultimately is found to be an infringer, as was the case with appellee, is not to be mulcted in punitive damages. Equity is satisfied if he accounts for all the pecuniary benefits he derived from the use of the infringing machine. If there were no other way of obtaining the result, he might rightly be held for all the profits he made from the output of his establishment. But if, as here, other machines for doing the same work, though less effectively, were available at the date of the patent, the whole advantage would lie in the increase of efficiency. As to an infringer, who at that stage of the art appropriated the invention, the

standard of comparison is clear. He has taken to himself all the advantages that belonged exclusively to the patentee in the field of competition. Fifteen years later, when the art has advanced to include other noninfringing machines, available to manufacturers and more effective than those of the prior art, the patentee cannot avoid their competitive effect. At this stage the only actual advantage of the patented machine is its superiority, if any, over these later machines that are not dominated by the patent. If at this stage one should choose to enter upon the manufacture of barbed wire, he could take the later machines without giving the patentee any cause of action. If, however, he should adopt a machine that finally was adjudged to be an infringement, all that he would actually gain by the infringement would be the excess in effectiveness of the infringing machine over the later, available, competitive machines. To hold him accountable for more, to make him pay for the advantages of the invention over the prior art, would attribute to the patent a virtue it did not really have at the later period, would penalize the infringer simply because he was an infringer, and would mulct him in vindictive damages to the extent of the difference in effectiveness between the open prior art and the open current art."

To my mind, upon principle, and seemingly unopposed by any authority except the Turrill Case, supra, selection of a standard for comparison to ascertain profits is not to be restricted to unpatented devices, or to such devices or processes as were a part of the art at the date of the patent infringed. The field for selection embraces all that was a part of the art at the time the invention is appropriated, whether patented or not. In case of a patented article, two questions become pertinent: First, was it actually available to the infringer during the period of infringement? and, second, if so, at what, if any, cost to him? If not available to the defendant, as when the owner of the patent declines to permit the defendant to use the patented article, it cannot be set up as a standard. If available, but only at a price, then what it would have cost the defendant, had he used the said device rather than the infringing one, is material evidence on the question of what gain was obtained by the defendant from the use of the infringing device. In the absence of evidence showing that the unused device was more economical than the one used, it will be presumed that such price, at least, is the gain obtained by the defendant from the use of the infringing device, and it will be credited to the plaintiff as the profits recoverable from the defendant.

The plaintiffs' further contention (one of fact) that the said noninfringing system of the Transmission Company, known as the "suction tube or three-pipe system," was not open to the defendants at the time of their infringement, for the reason that it was then "in an undeveloped experimental condition," is not sustained by the evidence, which shows that said noninfringing system at that time was in commercial use and giving satisfaction. The evidence also establishes that said suction tube system is as economical as the defendants' infringing device for the purposes for which it was used by the defendants.

As the defendants could have had said noninfringing apparatus installed at no greater cost than that which infringed and as they have made no gain from the use of the infringing device over and above what they would have made, had they used said noninfringing system, it follows that there are no profits recoverable against them in this accounting. Whether the Universal Pneumatic Transmission Compa-

ny, who installed the infringing system (and who is admittedly a contributing infringer), is accountable for the profits made in such installation, is not a pertinent inquiry, as it is not a defendant in this case.

The master's finding of profits is therefore overruled.