RACINE ENGINE & MACHINERY CO. v. CONFECTIONERS' MACHINERY
& MFG. CO.

(Circuit Court of Appeals, Seventh Circuit.   April 18, 1916.)

No. 2284.

1. PATENTS &⚬324(6)—SUIT FOR INFRINGEMENT—APPEAL FROM INTERLOCUTORY
DECREE—EFFECT OF AFFIRMANCE.
   On the general affirmance on appeal of an interlocutory decree in a
patent case, sustaining the patent, finding infringement, and awarding
an injunction, such issues were conclusively settled; but so much of
decree as relates to the accounting remains purely interlocutory, and
subject to modification by the District Court until final decree.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 600; Dec. Dig.
&⚬324(6).]

2. CORPORATIONS &⚬590(4)—LIABILITY FOR INFRINGEMENT—SUCCEEDING COR-
PORATION.
   A corporation, purchasing all the property of another corporation, does
not thereby become liable for the obligations of the latter, and in the ab-
sence of an express agreement therefor cannot be held to account for its
infringement of a patent.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2365; Dec.
Dig. &⚬590(4).]

3 PATENTS &⚬318(3)—INFRINGEMENT—ACCOUNTING FOR PROFITS.
   On an accounting by an infringer for profits made on the sale of in-
fringing machines, it should not be charged with the agreed price at
which old machines were taken in exchange, where it appears that they
were scrapped and nothing was realized therefrom.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 570, 571, 575;
Dec. Dig. &⚬318(3).]

4. PATENTS &⚬318(4)—SUIT FOR INFRINGEMENT—PROFITS RECOVERABLE.
   Where the patented elements give the entire value to an infringing ma-
chine, without which it would not be marketable, the complainant is en-
titled to recover all the profits.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 572, 573; Dec.
Dig. &⚬318(4).]

Appeal from the District Court of the United States for the East-
ern District of Wisconsin; Ferdinand A. Geiger, Judge.

Suit in equity by the Confectioners' Machinery & Manufacturing
Company against the Racine Engine & Machinery Company. From
final decree, defendant appeals.   Reversed.

The amended bill of complaint, filed January 18, 1908, charges appellant
with infringement of patent to Clacher, No. 449,688, April 7, 1891, for im-
provement in separating and filling machines for confectioners' use, and asks
for an injunction and accounting for damages and profits.   It is charged that
on April 3, 1903, appellee brought suit in the federal Circuit Court for Massa-
chusetts against Kibbe Bros. Company, charging infringement of said pat-
ent through the use of a machine which the bill here alleges was made by
appellants, and which suit in Massachusetts resulted in a decree entered
November 27, 1905, sustaining the patent and adjudging Kibbe Bros. Company
to have infringed it.   It is alleged that the defense of the Massachusetts suit
was assumed, conducted, and paid for by appellant, and that appellant is
bound by the decree therein, and is estopped to contest or deny the validity
of the letters patent.

July 14, 1908, the District Court entered an interlocutory decree in this
cause, finding that appellant was estopped to deny the validity of the patent,

and that it infringed same, and enjoining appellant from selling or disposing of any infringing machines which were made by appellant prior to April 7, 1908, the date of expiration of the patent, and referring the cause to a master for accounting of damages and profits. 163 Fed. 914. On appeal by appellant this decree was on April 15, 1909, affirmed, without opinion, by this court.

In the interlocutory decree it is provided that appellee recover from appellant profits, gains, and advantages which appellant derived on account of the infringement from November 27, 1905, to April 7, 1908. After the hearing had begun before the master, upon motion of appellee and over objection of appellant the District Court on February 1, 1910, entered an order amending the interlocutory decree by changing the date therein provided for the accounting to commence, viz. November 27, 1905 (which is the date of entry of the Massachusetts decree), to April 3, 1903 (which is the date of the commencement of the Massachusetts suit). The accounting was accordingly taken beginning April 3, 1903, but the master in his report separated it into three periods, which periods, and the amount of net profits on sale of infringing machines during each period were reported as follows: (a) November 27, 1905, to April 7, 1908, $3,093.76; (b) April 15, 1905, to November 27, 1908, $236.76; and (c) April 3, 1903, to April 15, 1905, $386.82. To the total of these amounts the master added two items, one of $275 (accruing during the second period above designated), and one of $2,502.43 (accruing during the third period), which represented the prices at which old machines had from time to time been taken back in exchange for new ones, and which prices had been deducted on the books in estimating the items of net profits as above stated. The final decree was for an aggregate, including the items for old machines, of $6,494.77, with interest from date of filing of master's report.

It appears that appellant was incorporated April 15, 1905. It then succeeded to the business of the Racine Manufacturing Company whose assets (consisting mainly, if not entirely, of its good will) appellant purchased, and whose stockholders were largely the same as those of appellant. Appellant contends that the court erred in amending the decree in respect to the date for commencing of the accounting, and in requiring appellant to account for profits which accrued to its predecessor, prior to appellant's incorporation, and in charging as profits the amounts at which old machines were taken back, and in allowing to appellee the entire profits on the machines, whereas appellant claims that substantial features of the machines entering into their construction and marketability were not covered by the patent, and that there should have been an apportionment of the profits derived from the sale of the machines.

John B. Simmons, of Racine, Wis., and F. E. Dennett, of Milwaukee, Wis., for appellant.

William Quinby, of Boston, Mass., for appellee.

Before BAKER, KOHLSAAT, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] But for the Act of Congress of March 3, 1891, c. 517, 26 Stat. 828, creating the Court of Appeals, and section 7 of said act (Comp. St. 1913, § 1121), giving right of appeal from an interlocutory decree granting an injunction—

"an order or decree in a patent cause, whether upon preliminary application or upon final hearing, granting an injunction and referring the cause to a master for an account of profits and damages, was interlocutory only, and not final, and therefore not reviewable on appeal before the final decree in the cause." Smith v. Vulcan Iron Works, 165 U. S. 518, 524, 17 Sup. Ct. 407, 410 (41 L. Ed. 810), and cases there cited.

In the recent work of Whitehouse on Equity Practice, vol. 1, § 393, it is said:

"According to the modern practice, at the final hearing all interlocutory orders made at any previous stages of the proceedings are before the court and may be modified, altered or vacated as justice may require."

The cases there cited fully sustain the text.

Prior to the decision in Smith v. Vulcan Iron Works there was a contrariety of opinion among the Courts of Appeals as to whether, upon an appeal from a decree granting a preliminary injunction, the merits of the controversy upon which the right to the injunction is predicated could be finally settled. In that case this was determined in the affirmative, and has since been the general rule; and so if and after hearing the patent is sustained, infringement found and injunction awarded, upon appeal this court may finally determine the validity of the patent, and its determination is binding on the District Court. But as to so much of the decree as affects the accounting only, and bears no necessary relation to the merits of the injunction, the statute providing for appeal in case of injunction has no application, and the decree in this respect remains purely interlocutory, subject to modification by the District Court until entry of final decree. Affirmance generally of the interlocutory decree would not as to the accounting, make final that which, but for the appeal, would be interlocutory only. Over the accounting and all its incidents the District Court retains jurisdiction until final decree thereon is entered. We find no error in the order permitting the interlocutory decree to be amended by fixing an earlier date for the accounting to begin.

[2] But the record discloses that the earlier date thus fixed by the amendment would require appellant to account for profits for nearly two years before the date of its corporate organization. To meet this situation, it is stated in appellee's brief that "the present defendant is the successor of its predecessor," and calls attention to evidence in the record showing "formal adoption of the prior suit by the defendant's immediate predecessor," and "voucher showing payment of counsel fees and court costs, and that in such vouchers it is shown that the present defendant was such successor, and that 95 per cent. of appellant's stock was owned by its president, who was in practical control of the predecessor." Assuming all this to be warranted by the record, it would not make appellant liable to account for damages or profits growing out of infringement by its predecessor. These facts were material on the issue here as to the binding force of the Massachusetts decree, but are not sufficient to make appellant answerable for the torts or even the contracts of its business predecessor.

It is stated in appellee's brief, and authorities are cited in support, "that the present defendant was a merger or consolidation of two other corporations," including the predecessor corporation, and therefore becomes liable for the debts of such merging or consolidating corporations. But the record does not show any merger or consolidation. It appears from Mr. Peil's uncontradicted testimony that appellant purchased the good will of the predecessor, which had no other

assets, but that for his stock in the new corporation (about 95 per cent. of the total) he paid par in cash. The record discloses nothing by way of agreement or otherwise to warrant the conclusion that appellant undertook to become liable for any obligation of its predecessor for damages or profits growing out of the latter's infringement of appellee's patent.

A corporation purchasing all the property of another corporation does not thereby become liable for the obligations of the latter. 5 Thompson, Corp. c. 148; 2 Cook, Corp. § 673. It follows that, notwithstanding the amendment, the accounting as to appellant should not begin prior to the date of its organization, April 15, 1905.

[3] There was no evidence of damages, but only of the profits on the infringing machines, as to which appellant's books constituted the only evidence offered. The master reported the profits for the period beginning April 15, 1905 (date of appellant's organization), and ending April 7, 1908 (date of expiration of patent), to be $3,330.50, of which $236.76 is for the period between April 15, 1905, and November 27, 1905. To these profits as ascertained from the books the master added items, $2,502.43 and $275, which the books showed were for old machines taken in exchange. The first of these items appears in the account as prior to April 15, 1905, and is therefore not in any event to be considered as against appellant. The item of $275 appears in the account from April 15, 1905, to November 27, 1905; but as to this item, as well as the larger item, it was testified that the old machines taken in exchange were in most instances scrapped, and realized nothing to appellant nor to its predecessor. We conclude from the record that this item of $275 should not be added to the profits to be accounted for by appellant.

[4] It is earnestly contended for appellant that in the infringing machines are combined material elements, patented and unpatented, aside from the Clacher invention, and that appellant should not be required to account for the entire profit shown to have been made on the infringing machines, but that the profits should be apportioned. The master reported that:

"Without the elements of the Clacher invention claims 1, 2, 3, 4, and 5 in the defendant's No. 3 Starch Buck, which it is admitted is the infringing machine, it would not be a marketable article, or salable structure. The employment of the infringing elements in this No. 3 Starch Buck is the life of the machine."

This conclusion is, we believe, warranted from the record. Attempt was made to show some sales of certain parts of the machine without the Clacher device; but the evidence thereon is unsatisfactory, and does not in our judgment afford sufficient basis for an apportionment of the profits. We feel justified in following here the course indicated by this court in Orr & Lockett Hardware Co. v. Murray, 163 Fed. 54, 89 C. C. A. 492, where under quite similar circumstances a decree for the entire profit shown to have been realized on the infringing article was affirmed. This is also in consonance with the rules laid down in the leading case of Westinghouse Electric & Mfg. Co. v. Wagner Elec-

tric & Mfg. Co., 225 U. S. 604, 614, 32 Sup. Ct. 691, 694 (56 L. Ed. 1222, 41 L. R. A. [N. S.] 653), in which the Supreme Court said:

"Where a patent, though using old elements, gives the entire value to the combination, the plaintiff is entitled to recover all the profits."

The decree of the District Court is reversed, with direction to enter a decree against appellant and in favor of appellee for $3,330.52, with interest at 6 per cent. per annum from date of filing the report of the master to date of entry of the decree, such decree to be in other respects like the decree from which this appeal is prosecuted; each party to pay one-half of the costs of printing transcript of record on this appeal.