## JAMES L. TAYLOR MFG. CO. v. STEUER-NAGEL.

Circuit Court of Appeals, Second Circuit.
May 2, 1927.

No. 288.

**1. Patents ⊚⇒318(4)—Profits on all products infringing patent are properly included in accounting.**

Profits on all products constituting infringement of patent are properly included in accounting, after interlocutory decree holding patent valid and infringed.

**2. Patents ⊚⇒318(4⅜)—Inventor of device constituting improvement, on accounting for infringement, must properly apportion profits.**

Where patented device held valid and infringed was but an improvement, inventor, on accounting for infringement, has burden of properly apportioning profits as resulting from patented feature and unpatented features.

**3. Patents ⊚⇒318(4)—Recovery for profits derived partially from product constructed under another patent should be limited to profits derived from use of infringing elements.**

Where part of infringing product is different and constructed under another patent, recovery on accounting should be limited to profits derived from infringing, as distinguished from noninfringing, elements, if apportionment is possible.

Appeal from the District Court of the United States for the District of Connecticut.

Suit by the James L. Taylor Manufacturing Company against Henry Steuernagel, trading as the Hartford Clamp Company. Plaintiff was awarded an interlocutory decree holding its patent valid and infringed. The report of the special master as to damages sustained thereby was reversed, and from a final decree defendant appeals. Reversed and remanded.

See, also, 294 F. 362.

Josiah H. Peck, of Hartford, Conn., for appellant.

Russell M. Everett and Harry B. Rook, both of New York City, for appellee.

Before MANTON and SWAN, Circuit Judges, and CAMPBELL, District Judge.

MANTON, Circuit Judge. The appellee sues for infringement of its patent for an improvement in screw clamps which are used by carpenters and cabinet workers for clamping glued work. The patent was held valid and infringed. The clamp comprises a bar having a fixed end through which a screw works to move a head toward and away from the work. The work lies on the bar, and is engaged at the opposite end by an adjustable stop. The stop is a recess, which opens through the rear of the head and is closed against the bar at the front of the head or clamping place. Within the recess is a wedge having a large end rearward and extending out from the recess, and to which is attached a gripping block, which engages the bar, to prevent the adjustable head from sliding. A portion of the wedge is upturned to carry a projecting pin, upon which is a spring which bears against the rear wall of the recess. The spring and wedge are concealed in the adjustable head, but have extending outward therefrom a projecting end, which is provided with a finger grip, and this in turn enables the workman to grip the wedge and adjust the head to any desired position, up or down the bar. The spring acts to instantly grip the bar when pressure is applied. The clamp, as thus constructed, sustains the pressure of great weight, and in actual operation may and does receive the pressure of the screw and the leverage. It is made in many sizes, depending upon the length and width of the bar. The court below found that the essential element of the invention was the adjustable head indicated, and that it is in this head that the recessed wedge and spring are contained.

The accounting of profits was ordered and taken before a special master, who reported that appellee claimed the entire profits for appellant's sales of clamps, but that in his opinion profits should be apportioned, and, since appellee made no effort to do so in the testimony, he awarded nominal damages of $1. He did report that the total profits of sales of the infringing device for the period of appellant's business—July 19, 1918, to April, 1924—was $5,299.88.

[1] A review of the award of damages is the sole question presented on this appeal. The volume of business done during this period, of which the infringing tailpiece of the clamp was a part, amounted to 52.02 per cent. of appellant's total business, or $50,217.04; the total amount of business being $96,542.53. There was evidence of sales of infringing products by the appellant's listing double bar clamps amounting to 41.42 per cent., or $39,989.57. The appellee claims correctly that the profits on the double bars should be included in the award, as well as the single bar clamp. Since it was found that the products both of the single and double bar type include the device patented, the District Court held, properly, that both should be included in the accounting. Union Electric Welding Co. v. Curry (C. C. A.) 279 F. 465; Consolidated Rubber Tire Co.

v. Diamond Rubber Co. (D. C.) 226 F. 455; Brown Bag Filling Mach. Co. v. Drohen (C. C.) 171 F. 438.

This patented feature used in both of these types of clamps, called a tailpiece, was used in connection with a headpiece and longitudinal rods, the composite being a clamp used in the art. The locking device of the tailpiece was the patented feature, and, as the master pointed out, it was this improvement that marked a step forward in the art. But there was no proof offered by the appellee, who must sustain the burden, of any rule or principle of apportionment by which the damages could have been assessed. The District Court reversed the master, who pointed out the requirement of such evidence, and held that the commercial value of the appellant's clamp was wholly due to the patented invention, and therefore it was unnecessary to offer evidence for the application of the rule of apportionment of profits. It was held an apportionment was impossible. [2] But it appears from both the evidence and the holding below that the patented device was but an improvement in the screw clamp. Screw clamps of this type had been used for many years by cabinetmakers and woodworkers to hold together pieces of wood, which are glued together to form larger pieces and must be held firmly together until the glue has dried. To do this work by a clamping device was old. The endpiece or headpiece rigidly attached to the bar was old. The sliding headpiece, adjustable along the bar by means of screws and cranks, was old. An adjustable tailpiece was old. The invention consisted in the wedge-shaped piece, as shown in the drawings, with its teeth gripping like a spring. It was so constructed that the tailpiece could be adjusted to any part on the bar, and when the wood or other material to be clamped is put into position between the movable headpiece and the adjustable tailpiece the pressure against the inner side of the tailpiece or stop forces the teeth on the gripping block into engagement with the bar. The specifications say the objects of the invention are to secure a more firmly fixed position of the adjustable head upon the longitudinal bar under strain and prevent any slipping of the same.

The Supreme Court in Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co., 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, announced the rule to be that (1) where an infringer has sold or used a patented article, the plaintiff is entitled to recover all the profits; (2) where a patent, though using old elements, gives the entire value to the combination, the plaintiff is entitled to recover all the profits; (3) where profits are made by the use of an article patented as an entirety, the infringer is liable for all the profits unless he can show that a portion of them is the result of some other thing used by him; and (4) where the patent is only a part of the machine and creates only a part of the profits, the invention having been used in combination as an improvement only, or where other patents appropriated by the infringer are used and each may have jointly, but unequally, contributed to the profits, the invention creates only part of the profits, and the inventor is entitled to recover that part of the gains. In the last instance he must give evidence tending to separate or apportion a defendant's profits, and the patentee's damages are the difference between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative. In order to recover the entire profits on the sale of the machine, he must show by evidence of the same standard that the profits and damages are to be calculated on the whole machine, for the reason that its entire value makes it a marketable or salable article due to construction under the patent.

The rule of apportionment of profits when improvement has resulted from the invention was again announced in Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398. This was an improvement in a device on a seed-planting machine and the rest of the machine was old. The court said: "It is quite plain, as we think, that the patent was not for a new and operative grain drill, but only for particular improvements in a type of grain drill then in use and well known. The invention was so described in the specification forming part of the patent. * * * Insofar as the profits from the infringing sales are attributable to the patented improvements they belong to the plaintiff, and insofar as they were due to other parts or features they belonged to the defendant. But as the drills were sold in completed and operative form the profits resulting from the several parts are necessarily commingled. It was essential, therefore, that they be separated or apportioned between what was covered by the patent and what was not covered by it." In somewhat similar phrase we announced the same rule in Underwood Typewriter Co. v. Stearns & Co. (C. C. A.) 227 F. 74, and Metallic Rubber Tire Co. v. Hartford Rubber Works Co. (C. C. A.) 275 F. 315.

The court below, in reversing the master, adopted the rule that the infringer is liable for the entire profits made from the manufacture and sale of the article, where it appears that, but for the patented feature, the article would not have been salable. Armstrong v. Belding Bros. & Co. (C. C. A.) 297 F. 728. But we think that the principle was inapplicable to the facts presented at bar. Nor is the case similar in fact or principle to Wales v. Waterbury Mfg. Co. (C. C. A.) 101 F. 126. There the article sold was a pencil holder mounted on a buckle, which could be secured to a garment. The buckle was the patented article. The court held the article to be an integral thing for the pencil, which was not shown to have been sold without the buckle or any other buckle than the patented article. Therefore all the profits are attributable to the invention. Cases are rare in which the whole marketable value of a machine or collection of devices can be attributable to a patented feature which embraces merely an improvement in one of its parts. Westinghouse v. N. Y. Air Brake Co. (C. C. A.) 140 F. 545.

[3] On an accounting such as this it is most important to distinguish the profits derived from the infringing element, particularly where part at least of the infringing product is different and constructed under another patent. Underwood Typewriter Co. v. Stearns & Co., supra. In such case, recovery should be limited to the profits derived from the use of the infringing as distinguished from the noninfringing elements, if apportionment is possible. Because it may be difficult to find an applicable working principle to make the apportionment, neither changes the requirement so to do nor the legal necessity therefor. The locking device of the tailpiece was all the patent protected. The entire value of the clamp did not reside in the use of the patented tailpiece. To be sure, it marked a step forward in the art, for that is what granted invention to the patentee.' But since clamping devices were old, and, indeed, had tailpieces which were adjustable, but of different conceptions, and served with a headpiece and longitudinal rods, the composite being a clamp in the woodworking trade, we cannot regard this invention as more than an improvement on such construction.

Nor is it controlling that the appellee in his business sold principally the patented device. It is feasible and, indeed, necessary for the appellee, either through the use of the accounts as rendered or expert testimony, having regard for the advance of the art up to the time that the appellee's improvement appeared, to ascertain and to separate the profits which the appellant made in its business. Because this was not done below, we will reverse the decree and remand the case to the District Court, to proceed further in a manner directed by the District Judge in conformity with the views here expressed.

Decree reversed.