**STROMBERG MOTOR DEVICES CO. v.
ZENITH–DETROIT CORPORATION.
No. 464.**

Circuit Court of Appeals, Second Circuit.
Aug. 31, 1934.

L. HAND, Circuit Judge, dissenting.

See, also, (D. C.) 60 F.(2d) 1074.

Charles A. Brown, Arthur H. Boettcher, and Edward C. Grelle, all of Chicago, Ill. (Seward Davis, of New York City, of counsel), for plaintiff-appellant.

Merrell E. Clark and John Vaughan Groner, both of New York City, for Zenith-Detroit Corporation.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

The Mock patent, No. 1,404,879, is for an improvement in carburetors, and the claim which has been held valid and infringed reads:

"In a carburetor, a carbureting chamber having a mixture outlet, a Venturi tube leading to said carbureting chamber, a second Venturi tube leading into the first named Venturi tube, said Venturi tubes having their axes substantially coincident and having air inlets thereto, a fuel inlet leading into said second Venturi tube, and means for admitting air to said fuel inlet anterior to its point of discharge into second Venturi tube."

Carburetors were old when Mock made his invention, and both single and double venturi types were well known. They are used to mix the fuel with air just before it is drawn into the intake manifold of an internal combustion engine, and in their simplest form have a constant level fuel supply from which the fuel is piped to a jet opening into a venturi tube, an air supply past the jet into the mixing chamber, and a valve controlled outlet to the intake manifold of the engine. Mock's arrangement of the interior of a carburetor to provide a satisfactory mixture of air and fuel required two venturi tubes coaxially placed with an air inlet to each. He arranged them so as to receive fuel from one or more air-bled streams to jets which sprayed it into the mixing chamber. There was nothing new in using an air-bled leader to a jet into a venturi tube. As stated in our former opinion, supra: "The gist of the invention in suit is the combination of a coaxial double venturi with a fuel inlet which leads into the inner one and which has means for the admission of air thereto anterior to its point of discharge therein, be that fuel inlet single or compound."

It will now be unnecessary to describe the Mock carburetor in more detail than to point out in the words of the former opinion: " * * * It seems to be agreed by the experts that the device of the patent in suit is more than a mere aggregation by combining two old devices. The devices used were reproportioned, and they gave combined or co-operative effects. It was no mere addition of an extra venturi. There was readjustment and reproportionment to secure proper combined effect from co-operation of the different features. * * * While it is true the double venturi tubes were known in carburetors, as in the German patent to Rummel (1907), and that air-bleeding through an auxiliary well was known to carburetors in the Ahara patent (1901), the combination was not conceived or worked out until this inventor came forward."

To be sure the patent is for an improvement in the means for mixing fuel with air in a carburetor and only that, but, as that is the entire function of a carburetor, the redesigning of a conventional carburetor to accomplish the result in the patented way so changed the structure in its vital parts that the mixing was accomplished by a new combination of those parts which made the carburetor as a whole a distinctly new type of the old double venturi carburetor. Of course it is true that Mock's invention was not operable by itself, but neither would the remaining well-known parts of a carburetor into which it was put be operable without either Mock's invention or those parts which it replaced and which the carburetor could be redesigned to take. Except in combination, each would be just so much metal. But in combination Mock's invention characterized the whole and made the carburetor the new device which it was and which the defendant infringed. The combination became a unitary structure incapable of being anything except a Mock type double venturi carburetor unless it was substantially changed in its essential parts. Mock added no improving appendage merely, but wrought such changes that the carburetor became one which mixed fuel and air by his new method of combining the parts to work together. To all intents and purposes Mock's invention made the entire carburetor a new whole, and it became a unit which could not be divorced from the invention without changing the essential principles upon which the carburetor operated. It was like the converter in Westinghouse Electric & Mfg. Co. v. Wagner Elec-

tric & Mfg. Co., 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 21 L. R. A. (N. S.) 653. And so cases like Garretson v. Clark, 111 U. S. 120, 4 S. Ct. 291, 28 L. Ed. 371, and Dowagiac Mfg. Co. v. Minnesota Moline Plow Co. 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398, do not control here.

■ Nor does the fact that claim 4 did not describe in detail the conventional carburetor into which Mock's invention was to be put preclude the plaintiff from recovering the profits the defendant made. Such a carburetor was too well known to require minute description. One skilled in the art needed no information about it. The name itself supplied all that was required to know exactly what the claim meant. A carburetor equipped with the usual devices to make it operable but redesigned according to Mock's invention was what the claim called for. Bickell v. Smith-Hamburg-Scott Welding Co. (C. C. A.) 53 F.(2d) 356; McCarty v. Lehigh Valley R. R. Co., 160 U. S. 110, 16 S. Ct. 240, 40 L. Ed. 358.

■ Moreover, this situation differs from that considered in Rockwood v. General Fire Extinguisher Co. (C. C. A.) 37 F.(2d) 62, Taylor Mfg. Co. v. Steuernagel (C. C. A.) 19 F.(2d) 298, and Metallic Rubber Tire Co. v. Hartford Rubber Works (C. C. A.) 275 F. 315, where the improvements were but added advantages. If a customer wanted a Mock type carburetor, it was because of the Mock invention, and that was what made the whole thing salable. The defendant made and sold single venturi carburetors during the accounting period. When it also sold the infringing carburetor, it did so, of course, because the Mock intervention made that carburetor the article its customers wanted. Those who did not want the Mock carburetor bought other types. It was more expensive to make than a single venturi carburetor, and the Mock invention was what overcame price resistance and made such sales possible. The resulting profits are justly to be attributed to the infringement which alone made these carburetors salable. See Armstrong v. Belding Bros. & Co. (C. C. A.) 297 F. 728; Wales v. Waterbury Mfg. Co. (C. C. A.) 101 F. 126; Racine Engine & Machinery Co. v. Confectioners' Machinery & Mfg. Co. (C. C. A.) 234 F. 876; Flat Slab Patents Co. v. Turner (C. C. A.) 285 F. 257; Vandenburgh v. Concrete Steel Co. (C. C. A.) 278 F. 607; Philadelphia Rubber Works Co. v. U. S. Rubber Reclaiming Works (C. C. A.) 277 F. 171; Conroy v. Penn. Electrical Mfg. Co. (C. C. A.) 199 F. 427.

■■ The master, being of the opinion that the infringing carburetors were not unitary devices, reported that no profits should be recovered because the plaintiff had neither made nor attempted to make an apportionment and had failed to show that apportionment was impossible except by showing that it could not be made from the defendant's books alone. The District Judge, however, held that the infringement was what made these double venturi carburetors salable and decreed the entire profits to the plaintiff. This was correct. Had the invention been but a small detail of the infringing carburetors, the plaintiff would have had the burden of apportionment of the profits. Cincinnati Car Co. v. New York Rapid Transit Corp. (C. C. A.) 66 F.(2d) 592; Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., supra. But where the patent gives the entire value to the combination, the plaintiff is entitled to recover all the profits an infringer has made from its sale or use. Westinghouse Electric Mfg. Co. v. Wagner Electric & Mfg. Co., supra; Hurlbut v. Schillinger, 130 U. S. 456, 472, 9 S. Ct. 584, 32 L. Ed. 1011. In any event it was necessary for the infringer, to have the advantage of apportionment, since the patent covered a combination in which all the parts co-operated as a unit, to separate and apportion the profits if possible between the patented and the unpatented features. Yesbera v. Hardesty Mfg. Co. (C. C. A.) 166 F. 120; Oehring et al. v. Fox Typewriter Co. (C. C. A.) 251 F. 584.

■ The defendant also objects to the decree because it was allowed no deduction from profits on account of interest on its invested capital attributable to the manufacture and sale of the infringing carburetors. It took no exception to the master's report on this ground, and the District Court did not consider it. Strictly, it is not entitled to raise the point here, but we may under our rules notice and correct plain errors. There was some excuse also for the defendant's failure to raise the question by exception to the master's report. The plaintiff's counsel had stated at the hearing that "we raise no question" about interest on investment and on the report as filed; since no recovery of profits was recommended, the point was not directly important. That this interest, the amount of which is not disputed, should be deducted as a business expense, seems plain. Stromberg Motor Devices Co. v. Detroit Trust Co. (C. C. A.) 44 F.(2d) 958; Oehring v. Fox Typewriter Co., supra. The decree will be so modified.

Defendant now claims also that it changed part of the carburetors included within the accounting as infringements in such a way that they did not infringe. It filed no exceptions to the master's report, however, on this ground, and the District Court did not consider it. Presumptively the master was right, and, as this presents no plain error which justice requires us to notice, we decline to do so.

Finally, the defendant insists that it should be allowed a deduction for federal income taxes paid and attributable to the profits derived from the infringing carburetors. Such taxes reduce the profits in a very real sense. But for them the profits the defendant would have retained would have been so much the greater. Whether in its accounting with the plaintiff it may be entitled to the deduction depends upon whether it willfully was infringing the Mock patent or not. Larson Co. v. Wrigley Co., 277 U. S. 97, 48 S. Ct. 449, 72 L. Ed. 800. It did deliberately test this patent. It claimed it to be invalid and denied infringement. The issues raised were not without merit, as is made clear by the fact that it prevailed in the District Court and obtained a decree which we reversed on appeal. There was certainly a real controversy, and it would be a harsh rule which did not give the defendant the right to test the patent without being penalized on the accounting by what would be in effect punitive damages. We think the defendant's honest belief in its right to manufacture the infringing carburetors was sufficiently shown to entitle it to a deduction for income taxes paid which will leave it accountable to the plaintiff for only the profits of which it actually has had the benefit. Stromberg Motor Devices Co. v. Detroit Trust Co., supra; Macbeth-Evans Glass Co. v. L. E. Smith Glass Co. (C. C. A.) 23 F.(2d) 459. See, also, Straus v. Notaseme Hosiery Co., 240 U. S. 179, 36 S. Ct. 288, 60 L. Ed. 590.

The master found that the plaintiff's profits from the manufacture and sale of the infringing carburetors were $277,060.57. In arriving at this amount two credits were allowed the defendant. One was for $45,060.-57 which the defendant paid its president under an agreement which entitled him to a stated salary and a percentage of profits made. The other was for $99,377 for royalties which the defendant paid to a French company called the Societe des Carburetor Zenith by which the defendant was controlled. The plaintiff excepted to the allowances of each such credits, but its exceptions were overruled, and it appealed.

The defendant's contract with its president was made before any question of infringement of the Mock patent arose, and was not an unusual one. The profits the defendant made from the infringement were actually used as a part of the measure of the commission paid to its president in addition to his regular salary. The actual profits to the defendant as a result of the infringement were by so much reduced, and, as the plaintiff is entitled only to these actual profits, the credit was properly allowed. Stromberg Motor Devices Co. v. Detroit Trust Co., supra.

The same is true of payments made to the French company. They were actually made under an agreement entered into before the Mock patent was infringed, though the manufacture of the carburetor subsequently held to infringe was probably then contemplated. Yet there is no reasonable basis for believing that there was any attempt to divide profits with the French company. While the sharing of profits as such would not be permitted to the detriment of the plaintiff, a bona fide royalty agreement, such as this one seems to have been, had no other effect than to add to the expense of the business and reduce the defendant's actual profits. The credit was accordingly correctly allowed. Stromberg Motor Devices Co. v. Detroit Trust Co., supra.

Decree modified without costs in this court to either party.

L. HAND, Circuit Judge (dissenting).

As I understand it, my brothers and I do not differ as to the doctrines laid down in Westinghouse E. & M. Co. v. Wagner E. & M. Co., 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, and Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398, which still are our charter on this subject. We do not agree in their application; they think that this is a case where the patented improvement gave to the carbureter its whole value, and that seems to me not only unproven but disproven. In the case of an improvement patent, the only situation in which the infringer has the burden of proof is where he has added an improvement of his own. In that case he donates that improvement to the patentee, unless he can show how much it contributed to the joint profit. This is quite a different matter from the rule that where the invention is for an improvement, the patentee must in the first place apportion the contribution to the profit of the invention and of the prior art. The only ap-

parent, though not real, exceptions to this are where the invention covers the whole article—not properly an instance of an improvement at all—or where, though an improvement, the patentee can show that the invention has given the article its whole value, which is really no more than an application of the general rule.

In the case at bar there had been in the prior art carburetors with a single venturi and an "air-bleed"; there had also been carburetors with a double venturi; but there had never been a carburetor with a double venturi and an "air-bleed." This combination was the invention, coupled with some incidental new designing, a factor to which we referred when we decided the first appeal, but which could hardly itself be invention. When the defendant was enjoined, it resumed the manufacture of the single venturi with an "air-bleed" and made some profit. That alone seems to me affirmatively to disprove the plaintiff's claim; but quite aside from it, the carburetor was a very plain instance of an improvement, an addition to what went before, and the patentee has certainly not shown that the second venturi, or the "air-bleed" was the only source of the profit. It does not advance the argument to say that the sale would not have been made without the improvement. Probably it would not; in any case the issue of apportionment only arises upon that implication. But the same is true also as to the elements which were taken from the prior art; the sale depended upon them as well as on the improvement, and the very issue is as to how far each factor quantitatively contributed to the profit. That may be, strictly speaking, an insoluble problem; but at least it does not help to a solution to observe that the improvement is one of the conditions necessary to the sale. Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., supra, 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398, is quite in line with this result. Although it does not appear that the improvement was necessary to the sale, that was certainly possible, and the case was disposed of on that assumption, for the patentee lost because he could not apportion the relative contribution of the old and the new. Nor does it seem to me vital that the second venturi or the "air-bleed" was not a detachable addition. I can see that if the improvement can be separated and the old and new are sold separably, there is a ready means of apportioning the joint profit when both are sold together; but I can see nothing more in separability than that. Certainly it is a wholly illegitimate inference to say, because

the two cannot exist apart, that the only value of the combination rests in the new parts. To confound the whole with any one of the constituents is equally gratuitous, whether each can exist alone or only in unison. Nothing in Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., supra, 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398, lends any color to such an argument. So far as appears, the addition was so affixed to the old reaper that the machine would have been wrecked if it had been taken off.

For these reasons the patentee in my opinion failed to make out a case for profits, and as it does not claim to have proved a reasonable royalty, the master was right. However, if profits are to be allowed at all, I agree with the disposition made of the items in dispute.