## CINCINNATI TRACTION BLDG. CO. v. PULLMAN–STANDARD CAR MFG. CO.

### No. 1079.

District Court, D. Delaware.
Jan. 11, 1940.

Hugh M. Morris, of Wilmington, Del., and Rowan A. Greer (of Toulmin & Toulmin), of Dayton, Ohio, for plaintiff.

Herbert L. Cohen, of Wilmington, Del., and L. B. Mann (of Mann, Brown & Cox), of Chicago, Ill., for defendant.

NIELDS, District Judge.

This is a patent suit by The Cincinnati Traction Building Company, of Ohio, against Pullman-Standard Car Manufacturing Company, of Delaware, for infringement of three United States patents owned by plaintiff. All of the patents relate to improvements in the construction of articulated railroad or traction cars. The defenses are invalidity and noninfringement.

The three patents in suit are Elliott, No. 1,499,510 issued July 1, 1924; Ellis, No. 1,500,118 issued July 8, 1924; and Elliott, No. 1,501,325 issued July 15, 1924. Plaintiff charges defendant with infringement of these patents by making and selling two trains of articulated cars for Union Pacific Railroad and one train of articulated cars for the New York Rapid Transit Corporation. Plaintiff introduced no evidence to support the charge of infringement with respect to the New York Rapid Transit devices and consented in open court to a decree dismissing the bill of complaint with prejudice as to that particular construction.

The first Elliott patent relates to mounting an independent vestibule on adjacent car platforms. The special feature to which the invention is directed is the vestibule independent of the structure of the cars and mounted on platforms of the adjacent cars to form a safe housing for passengers in going from one car to the other. The preferred form of this vestibule is cylindrical. At the bottom there is a floor and at the top a roof. Sheet steel is the preferred material though the vestibule may be constructed of other material and may be of any other shape. The floor of the vestibule rests upon the wood floor of the two adjacent car platforms and overlaps the platforms so as to bridge the gap between them. There is no positive connection between the vestibule and the platforms. It may be said to float or merely rest upon the platforms.

The claims in suit are Nos. 1–7, 9 and 10. Claims 4 and 9 are typical:

"4. The combination with two articulated cars mounted on a truck common to both, of a vestibule unit comprising an enclosure positioned to partly rest on each platform and devices which connect the vestibule with the bolster for the purpose stated."

"9. The combination with a truck bolster, of a vestibule unit comprising an enclosing structure and means for connecting the bolster with said vestibule to cause the latter to move in substantial unison with the bolster when deflected by the course of the tracks."

The Ellis patent discloses substantially the same construction as the first Elliott patent. He started with Elliott's vestibule resting on the platforms of two adjacent cars articulated to a common truck. Ellis sought to limit the side sway of articulated cars by spring ties connecting the vestibule floor to the truck bolster. He wanted to make the vestibule cooperate with the bolster. He put a yoke like an inverted U at each side of the vestibule extending from the ends of the bolster. He put a spring on the bolt both above and below the floor and the yoke. His idea was that if the car tended to swing over to the right it would tend to swing the vestibule over to the right and the springs on the left holding the vestibule floor down to the bolster would tend to hold the platform of the car down and thus reduce the sway.

The gist of the scheme is to have the vestibule floor rest on the car platforms and be yieldingly tied down at each side to the bolster of the common truck.

Claim 7 is the only claim in suit: "7. In a railway car, the combination with a truck bolster, side bearings carried thereby, and two adjacent car platforms, a pivotal connection between each platform and the bolster and a vestibule positioned to overlap the adjacent portions of the platform and to extend over the side bearings on the bolster, whereby a four-point contact is provided, two points between the platforms and bolster and two other points between the vestibule and bolster."

The second Elliott patent relates to a scheme of double articulation between the adjacent ends of two cars and a common truck. The scheme consists of independent trunnions, each resting in its own socket in a truck center plate on the bolster so that pull and thrust forces as well as all others are transmitted first from one trunnion to the truck center plate and thence from the truck center plate to the other trunnion. The truck center plate has lugs adapted to receive a locking bolt fitting over shoulders on the trunnions to hold them in the sockets.

The structure of the second Elliott patent is the same as the first Elliott and the Ellis patents. The claims in the second Elliott patent go to the specific structure of the joint whereby depending trunnions from each car platform or each car and sill fit into the socket of the common truck. The claims in suit are Nos. 1, 2, 3, 4, 5 and 6. Claim 4 is typical: "4. In a railway car, the combination with a truck bolster and a base plate having sockets, of two adjacent cars, each having a pivot trunnion secured thereto and adapted each to occupy a socket, and a locking device comprising a removable member adapted to engage with the trunnions and prevent their withdrawal from the sockets."

The patents in suit were adjudicated in the second circuit. Cincinnati Car Co. v. New York Rapid Transit Corporation, D. C., 32 F.2d 376; Id., D.C., 35 F.2d 679; Id., 2 Cir., 52 F.2d 44; Id., 2 Cir., 66 F.2d 592. In the New York actions the validity of plaintiff's patents was attacked. Many of the patents pleaded in anticipation in the instant case were pleaded in anticipation in New York such as Raymond No. 376,907, Rounds 884,420, Way 1,412,075 and Gresley British Patent No. 4,512 of 1907. The evidence in the case at bar presents no additional facts establishing invalidity of any of the patents in suit. In view of the conclusion hereinafter reached on the question of infringement, the court will not deal with the defense of invalidity.

The reasoning of the New York courts is applicable to this case. In considering the Raymond patent, pleaded in anticipation, the court found the vestibule in the Raymond patent fixed to or supported by the truck. It overlaps the two platforms but is not supported by them. The court found that supporting the vestibule on the platforms of the cars was the distinguishing feature of Elliott's first patent and that this feature the defendant in the New York case did not appropriate. Of the Elliott patent the court said [35 F.2d 680]: "The disclosure presupposed that the vestibule shall ride or 'float' upon the platforms and the defendant in carrying it otherwise does not functionally adopt anything disclosed."

The court found the vestibule in defendant's structure in the New York case supported by a "knob" in the middle at the bottom of the floor; that this knob rested upon a bar extending all the way across the structure which in turn was supported by uprights on each side. Thus the New York court found the vestibule supported on the bolster and not upon the car platforms. It therefore held that the New York structure did not infringe the first Elliott patent whose dominating characteristic was that the vestibule was supported on the plat-

forms of the two cars. Since the defendant in that case supported the vestibule on the bolster it did not infringe.

We come to defendant's alleged infringing structure in this case. The vestibule is supported by a strong casting which is an inverted U-shaped yoke fastened to the bolster. Instead of the "knob" for supporting the vestibule, this defendant uses a cup-shaped washer, a piece of rubber and a bolt; but the support is entirely upon the yoke. No one would build such a yoke and fasten the vestibule to it unless it was intended to support the vestibule upon the yoke. The New York court found the New York defendant's structure did not infringe the Elliott patent because the vestibule was supported upon the bolster and not upon the car platforms. So in this case the vestibule is supported on the bolster through the yoke. The yoke goes down to and is fastened to the bolster.

Ellis started out with Elliott's structure, —a vestibule resting on the platforms of two adjacent cars articulated to a common truck. The New York court found that in defendant's type B structure defendant in New York had abandoned any springs between the vestibule floor and the bolster and substituted cushioning springs between the sides of the cars and the upright sides of the vestibule to hold it in place. Therefore the New York court found that defendant did not infringe.

In defendant's Union Pacific structure in the instant case the vestibule is supported on a heavy casting below it which in turn is supported by the bolster. Thus the vestibule itself is supported on the bolster. There is a total absence of any springs corresponding to the Ellis springs as shown in the Ellis patent. There are four sets of springs in defendant's structure urging four sets of rollers against the cylindrical wall of the vestibule. The springs and rollers are in series all the way up the side of the vestibule in four places. The rollers are short and individual to each spring. If the New York defendant's type B device with its springs on the sides of the vestibule did not infringe the Ellis patent it is clear that the almost identical structure of the defendant in this suit does not infringe the Ellis patent.

The whole point in the second Elliott patent is what Elliott calls double articulation—a complete and independent pivotal connection between each car and the bolster of the common truck. He provides what he calls a socket plate with two separate and distinct sockets into which he places his socalled trunnion, individual to each of the adjacent ends of the two cars. In that way each car can rock independently of the other, sidewise or otherwise, and each car can be taken away from the truck without disturbing the relation between the other car and the truck. Only the weight of one end of the car is on the bearing.

The New York court held that defendant's original structure infringed the second Elliott patent because the draft went from one car to the bolster and from the bolster to the other car. The district court gave the New York defendant the privilege of submitting substitutes to avoid that infringement. In the substitute structure both pull and draft pass directly from one car to the other and not through the socket plate or the bolster. The second substitute includes a center pin. The New York court declared the defendant went back to the British patent to Gresley to get its non-infringing structure. The substitute device has a changed lefthand trunnion. The other trunnion remains as in the infringing structure. Instead of having two independent trunnions resting in the socket on the truck bolster the lefthand trunnion has been placed in a cuplike extension made integral with it. Into the cup is placed a second trunnion. The result is that all forces are transmitted to and from the second trunnion directly from or to the trunnion with the cup-shaped extension without first going through the socket which acts only as a supporting member. Defendant proposed to use part of its device which was held to infringe but use it with another part so changed that the cars are articulated and cooperate in accordance with Gresley and not with Elliott.

In defendant's Union Pacific structure which is alleged to infringe there is on the right a center plate fitting into a center plate on the left which in turn rests upon a center plate on the bolster. Any pull on the right car goes to the right center plate and from there to the left center plate and from the left center plate to the left car exactly as in the New York defendant's substitute device. The defendant in this case went back to the patent to Gresley which first disclosed this form of articulation.

Defendant's Union Pacific structure does not infringe any of plaintiff's patents.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with Rule 52(a) of the New Rules of Civil Procedure, 28 U. S.C.A. following section 723c.

The bill must be dismissed.